UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOSE ARNOLD MONTIEL,

                    Plaintiff,                          Case No. 1:25-cv-121

v.                                                      Honorable Hala Y. Jarbou

P. TESSAR et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court

will grant Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act,

Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner

action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon

which relief can be granted, or seeks monetary relief from a defendant immune from such relief.

28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se*

complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's

allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*,

504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for

failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC)

at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Jackson County, Michigan. The

events about which he complains, however, occurred while he was housed at the Van Buren

County Jail, in Paw Paw, Van Buren County, Michigan. Plaintiff sues the "Sheriffs Station

Department," Sheriff Daniel Abbott, Undersheriff Kevin Conklin, Lieutenant Chad Hunt, Sergeant

Rebecca Laws, and Deputies P. Tessar and D. Kelley.

Plaintiff alleges that on July 10, 2023, while detained at the Van Buren County Jail awaiting

trial, he was involved with a physical altercation with another detainee, Ronnie Fritz. (Compl.,

ECF No. 1, Page ID.1–2.) Plaintiff describes the altercation as follows:

> Ronnie Fritz was standing outside his cell door . . . he stated pedo[ph]ile. And I
> stated stay out of my business, I'm speaking to deput[y] Kelley D. . . . please stay
> out of my business. HE THEN STEPPED TO ME placing his ear buds and tablet
> on the cell bars, while turning around he "Fritz" stated f**** pedo[ph]hile. Kelley
> D. bein[g] able to hear this, disregarded the confrontation and passive aggressive
> behavior of Fritz towards detainee "Montiel" and failed to radio it in, till after his
> aggressive behavior and de[me]anor became passive aggres[s]ion. He Fritz turned
> around, tensed and passive with a[n] aggres[s]i[ve] demeanor, as his hands came
> up as he spun around and he nudged me towards the catwalk bars. He leaned
> towards me trying to swing. I then defended myself and swung while I back up, as
> if I don't want any problem. He Fritz came towards me again. Officers failed to
> protect me as they did to protect him (Fritz) as well. The failure to come in and
> secure the situation, they let the situation commence to a physical altercation.

(*Id.*, PageID.2.)

Plaintiff does not suggest that he suffered any harm as a result of the altercation. He claims

that the incident reports that followed were biased, retaliatory, hazing, hateful, and harassing. (*Id.*)

Plaintiff attaches those reports to the complaint. In one report, Deputy Kelly described the incident

as follows:

> On 7/10/2023 at 1956, I Deputy Kelly, was conducting cell checks and arrived at
> cell 11. Inmate Montiel Jose Arnoldo #40998 was standing on the catwalk. Inmate
> Montiel asked me if I had heard about the acquittal. I stated that I did not know
> what he was talking about. Inmate Montiel proceeded to state "you know about the
> acquittal, you have to know because it involves other guards" and "Laws, DeRoo,
> Rhodes and other officers were involved in a pedophile ring and it was going to
> acquittal". I again stated that I did not know what he was talking about. I continued
> walking toward the door to exit cell 11. Inmate Fritz, Ronnie Joe #033173 was
> standing outside his cell door on the catwalk as inmate Montiel walked along

2

continuing to tell me about the acquittal. As inmate Montiel approached inmate Fritz he started to yell "stay out of my conversation". Inmate Fritz stated that he did not want to be in his conversation. Inmate Montiel continued to yell at inmate Fritz saying "back out of my business", "stay out of my conversation", "you don't need to talk to her right now" and multiple other things. Inmate Montiel became very agitated and pushed Fritz into the bars. (see below for details of the altercation). I radioed to Deputy to assist at cell 11. Both inmates were locked down and complied with commands.

After reviewing camera footage, at 1956, inmate Montiel pushed inmate Fritz into the cell bars. Inmate Montiel hits Fritz multiple times with his right hand to his torso (could not get an accurate number of strikes due to the cell bars disrupting the view). both inmates "tie up" and wrestle around. Fritz pulls away and Montiel continues to strike him with his right hand. Both inmates separate again and begin to "square up" and dance around. At 1957, Deputy Tessar arrives at cell 11. Deputy Tessar orders both inmates to lock down, to which they comply. Before returning to their cells, inmate Montiel approaches inmate Fritz to apologize and "fist bump". Both inmates said they were good and did not want us to report the fight. Inmates were informed that the altercation had to be documented and any disciplinary action arriving from the fight would be issued. Both inmates declined to press changes and neither wanted medical treatment.

(Dep. Kelly Statement, ECF No. 1-1, PageID.7.)

Plaintiff alleges that he advised several jail authorities "of the failure of staff [to] contact state police." (Compl., ECF No 1, PageID.2.) Those authorities included Lieutenant Chad Hunt, Sheriff Daniel Abbott and Undersheriff Kevin Conklin. (*Id*.) Plaintiff indicates that he wanted "those deputies"—presumably Deputies Kelly and Tessar—to contact the state police to report the assault. (*Id*.)

Although the focus of Plaintiff's complaint is the July 10, 2023, incident, Plaintiff also alleges that unidentified "(staff) deputies" were placing detainees at risk of harm by telling other inmates about prior offenses and charges. (*Id*., PageID.1.) Plaintiff does not indicate whether other inmates were informed of Plaintiff's prior offenses or charges. It may be that Plaintiff believes that such inappropriate sharing of information was behind Fritz's alleged accusation regarding Plaintiff's pedophilia. Plaintiff does not make such an allegation, nor does he claim that his prior

3

offenses or charges include such behavior, nor does he claim that any of the named Defendants shared such information.

Plaintiff seeks $2,000,000,000.00 in monetary damages.

## II.      Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

4

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III.    Claims against Defendant Sheriffs Station Department

In the caption of Plaintiff's complaint, he identifies the Sheriffs Station Department as a defendant. The Court concludes that Plaintiff intended to name the Van Buren County Sheriff's Department. Plaintiff cannot maintain suit against the Van Buren County Sheriff's Department because sheriff's departments are not legal entities subject to suit pursuant to § 1983. *See Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991); *Vine v. Cnty. of Ingham*, 884 F. Supp. 1153, 1158 (W.D. Mich. 1995). The Sheriff's Department is simply an agency of Van Buren County. *See Vine*, 884 F. Supp. at 1158. Plaintiff's claims against the Van Buren County Sheriff's Department will, therefore, be dismissed for failure to state a claim upon which relief may be granted.

It is also possible that Plaintiff intended to sue Van Buren County, an entity that is subject to suit, rather than the Sheriff's Department. But Plaintiff has not made any specific allegations against Van Buren County. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims . . . arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v.*

5

*Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Plaintiff fails to even mention Van Buren County in the body of his complaint. His allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Alternatively, Plaintiff may have named Van Buren County as a defendant based on a contention that the County is liable for the actions of its employees, specifically the individual defendants. But, Van Buren County may not be held vicariously liable for the actions of its employees under § 1983. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, a county is liable only when its official policy or custom causes the injury. *Connick*, 563 U.S. at 60. This policy or custom must be the moving force behind the alleged constitutional injury, and the plaintiff must identify the policy or custom, connect it to the governmental entity, and show that his injury was incurred because of the policy or custom. *See Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003).

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff's department. *See Monell*, 436 U.S. at 690. Moreover, the Sixth

Circuit has explained that a custom "for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996). "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.*

Here, Plaintiff has alleged no facts supporting an inference that the actions described within his complaint were the result of an official policy or custom employed by Van Buren County. Thus, the Court will dismiss, for failure to state a claim, any claims Plaintiff may have intended against Van Buren County. *See Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff's allegation of custom or policy was conclusory, and plaintiff failed to state facts supporting the allegation).

## IV.    Claims against Defendant Sergeant Laws

Plaintiff also lists Sergeant Rebecca Laws in the caption of his complaint. He does not attribute any action or inaction relating to the July 10, 2023, incident to Sergeant Laws. He does reference "Dep. Laws" and "Srgt. Derco" when he describes to Deputy Kelly the group that was "talking amongst themselves" regarding "pedo[ph]ile ac[c]usations." (Compl., ECF No. 1, PageID.1.) But he also fails to allege facts that connect those individuals to the July 10 incident.

Because Plaintiff fails to mention Sergeant Rebecca Laws in the body of his complaint, his allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Accordingly, the Court will dismiss Plaintiff's claims against Defendant Laws for failure to state a claim upon which relief may be granted.

7

**V.      Claims against Defendants Sheriff Abbott, Undersheriff Conklin, and Lieutenant Hunt**

Plaintiff alleges that he informed Defendants Abbott, Conklin, and Hunt regarding the July 10, 2023, incident, specifically regarding "the failure of staff [to] contact[] the state police" after the incident. (Compl., ECF No. 1, PageID.2.) Plaintiff fails to allege that Defendants Abbott, Conklin, or Hunt took any action against him, other than to state that they failed to respond to Plaintiff's grievances.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Abbott, Conklin, or Hunt engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them upon which relief may be granted.

**VI.    Claims against Defendants Kelly and Tessar**

Plaintiff alleges facts that show active involvement on the part of Defendants Kelly and Tessar in the July 10, 2023, incident. Plaintiff alleges that Defendants Kelly and Tessar engaged in "cruel and unusual punishment behavior." (Compl., ECF No. 1, PageID.1.) "Cruel and unusual punishment" is prohibited by the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837.

But the Eighth Amendment limitation applies to "punishments" and a pretrial detainee "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (footnote and citations omitted). Put differently, the Eighth Amendment's limit on "punishment" does not apply to a pretrial detainee because a pretrial detainee may not be punished at all. *Id.* at 536–37 (explaining that "the Government concededly may detain him to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment").

9

When a claim of deliberate indifference "is asserted on behalf of a pretrial detainee, the Due Process Clause of the Fourteenth Amendment is the proper starting point." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (internal quotation marks and citations omitted).

Plaintiff is now in the custody of the MDOC following his conviction on multiple charges. On July 10, 2023, however, Plaintiff was detained and awaiting trial.[1] Accordingly, his allegations implicate the protections of the Fourteenth Amendment rather than the Eighth Amendment.

Until recently, whether the Court considered a deliberate indifference claim under the Eighth Amendment or the Fourteenth Amendment did not make a difference because the Sixth Circuit "analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Greene v. Crawford Cnty.*, 22 F.4th 593, 605 (6th Cir. 2022) (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 591 (6th Cir. 2021)). In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), in the context of considering a pretrial detainee's claim for the use of excessive force, the Supreme Court concluded that application of the Eighth Amendment standard—requiring that the "detainee must show that the officers were *subjectively* aware that their use of force was unreasonable"—was not appropriate. 576 U.S. at 391–92. Instead, the Court held that a "detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id*. at 396–97.

In *Brawner*, the Sixth Circuit concluded that the modification of the subjective component that *Kingsley* applied in the excessive force context was appropriately applied to other deliberate-indifference claims. The *Brawner* court described the modification as a shift from the criminal

---

[1] Indeed, Plaintiff's trial—the trial that resulted in his principal convictions—began on July 18, 2023. *See* https://micourt.courts.michigan.gov/case-search/ (accept Terms of Service, search "Van Buren," select "Van Buren County 36th Circuit Court," enter Last Name "Montiel" and First Name "Jose," select Search, select Case ID "021-0000023378," select events) (last visited July 8, 2026).

recklessness standard adopted for the subjective element of an Eighth Amendment claim in *Farmer v. Brennan*, 522 U.S. 825 (1994), in favor of a "civil standard for recklessness," *Brawner*, 14 F.4th at 596. *Farmer* described that civil standard as follows: "[t]he civil law generally calls a person reckless who acts or (if the person has a duty to act) fails to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Farmer*, 522 U.S. at 836; *see also Howell v. NaphCare, Inc.*, 67 F.4th 302, 311 (6th Cir. 2023) (explaining that "[a]pplying *Kingsley*'s reasoning, *Brawner* held that a pretrial detainee must make a showing . . . that each defendant acted deliberately [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known" (internal quotation marks, footnote, and citations omitted)). This is a "distinction with[] a difference." *Howell*, 67 F.4th at 311.

Sorting out precisely how the second prong of the analysis should be applied has not been a simple matter. *See, e.g.*, *Trozzi v. Lake Cnty.*, 29 F.4th 745, 753–58 (6th Cir. 2022) (concluding that the two-element *Farmer* analysis, after *Kingsley* and *Brawner*, becomes a three-element analysis when the plaintiff is a pretrial detainee, one element regarding the seriousness of the risk and two elements capturing the new subjective requirements); *Westmoreland v. Butler Cnty.*, 29 F.4th 721, 729 (6th Cir. 2022) (adopting a four-element test for a failure to protect claim); *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 315–17 (6th Cir. 2023) (rejecting the *Trozzi* analysis in favor of the modified two-element analysis set forth above); *see also Helphenstine v. Lewis Cnty.*, 65 F.4th 794, 802 (6th Cir. 2023) (Statement of J. Readler regarding denial of rehearing en banc) (decrying the confusion that has followed *Brawner* and noting that "we are left to muddle on, following paths leading in any and all directions").[2]

---

[2] Most recently, in *Poynter v. Bennett*, 162 F.4th 664, 678–79 (6th Cir. 2025), *rehearing en banc granted, vacated* 169 F.4th 716 (2026), a panel returned the focus to the *Westmoreland* four-element test. The en banc reargument was heard on June 3, 2026.

No matter how a "civil standard for recklessness" is defined, Plaintiff has failed to allege facts that support the inference that either Defendant Kelly or Defendant Tessar acted recklessly. Moreover, the facts alleged do not support the inference that Plaintiff was subjected to an unjustifiably high risk of harm.

Accepting as true Plaintiff's allegations that detainee Fritz started the incident, rather than Defendant Kelly's report that Plaintiff started the incident, the facts do not suggest that Plaintiff suffered an unjustifiably high risk of harm nor do the facts suggest that Defendant Kelly or Defendant Tessar recklessly disregarded the risk.

Plaintiff states that Fritz's "hands came up as he spun around and he nudged me towards the catwalk bars." (Compl., ECF No. 1, PageID.2.) That was when Kelly "radio[ed] it in:" when Fritz's demeanor became aggression. (*Id*.)

Although Defendant Kelly's recorded perceptions of the event switches the roles with regard to the aggression, her account is otherwise consistent with Plaintiff's. When Plaintiff pushed Fritz into the bars, Defendant Kelly radioed Deputy Tessar for assistance. (Kelly Statement, ECF No. 1-1, PageID.7.) Defendant Kelly reports that Deputy Tessar arrived one minute after the call. (*Id*.) Plaintiff does not allege otherwise. Defendant Kelly reports that Plaintiff and Fritz then responded to Defendant Tessar's order to lock down. (*Id*.) Plaintiff does not allege otherwise.

Plaintiff's allegations ask the Court to infer that Defendant Kelly recklessly disregarded an unjustifiably high risk of harm because she failed to radio for help to stop a fight ***before the fight even started***. Plaintiff's conclusory allegations provide no facts that support the inference of either a high risk of harm or reckless disregard of that risk by Defendant Kelly.

With regard to Defendant Tessar, Plaintiff's allegations and supporting documents show that Defendant Tessar promptly responded to a call for assistance, ordered Fritz and Plaintiff to

12

lock down, and Fritz and Plaintiff complied. Plaintiff does not offer any factual basis to conclude that Defendant Tessar's response evidenced reckless disregard. In short, Plaintiff's recounting of the July 10, 2023, incident does not offer any basis to conclude that Defendant Kelly or Defendant Tessar violated Plaintiff's constitutional rights in their response.

Perhaps in recognition of the weakness of Plaintiff's "failure to protect" claim, Plaintiff pays lip service to additional claims suggesting that Defendant Kelly and/or Defendant Tessar violated Plaintiff's rights because (1) the reports regarding the incident falsely implicated Plaintiff as the aggressor; or (2) they failed to facilitate a report of the incident to the Michigan State Police. Plaintiff describes those purported wrongs as "due process" violations and "retaliation."

Plaintiff's description of the additional claims as retaliation implicates the protections of the First Amendment. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id*. Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, Plaintiff simply offers the word "retaliation" in his complaint. He fails to allege any facts showing he was engaged in protected conduct. The only adverse actions at issue are the purportedly false reports regarding who was the aggressor and the implied refusal of Defendants

13

Kelly or Tessar to connect Plaintiff with the state police regarding the incident. Plaintiff also fails to allege any facts that support the inference that those adverse actions were motivated by any protected conduct.

Plaintiff's retaliation claims are entirely conclusory and fail to state a claim. Plaintiff merely alleges the ultimate fact of retaliation; however, such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))). Accordingly, any retaliation claim that Plaintiff intended to raise is properly dismissed.

Plaintiff's "due process" claims also fail. It appears that Plaintiff contends that any reports of Defendants Kelly or Tessar regarding Plaintiff's identity as the aggressor denied him due process in the resulting misconduct hearing. The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

For a convicted prisoner, the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the change in conditions "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). For example, in *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997).

Plaintiff's allegations do not suggest that the reported misconduct had any impact on the duration of his stay in pretrial detention. Similarly, as to the second category, Plaintiff has not alleged facts that, in the language of *Sandin*, support the conclusion that Plaintiff was subject to an "atypical and significant" deprivation because of the misconduct. *Sandin*, 515 U.S. at 484. On the contrary, Plaintiff's allegations support the inference that he was in a maximum-security classification long before the July 10, 2023, incident. Indeed, one of Plaintiff's convictions is for an assault on a jail employee that occurred just seven months before July 10, 2023.

There is some question as to whether *Sandin* provides the proper measure for changes in the conditions of confinement for pretrial detainees.[3] Arguably, *Sandin*'s hardship test is flexible enough to address the conditions of confinement for pretrial detainees. For convicted prisoners, the test considers whether the deprivation is atypical and significant in relation to the normal incidents of prison life for convicted prisoners; for pretrial detainees, the test could evaluate whether the deprivation is atypical and significant in relation to the normal incidents of life in pretrial detention.

Notably, in *Sandin*, the Supreme Court concluded that placement in segregation for 30 days did not impose an atypical and significant hardship. *Id*. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant). Instead, generally only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g., Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (concluding that thirteen years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of

---

[3] In *Johnson v. Grayson Cnty, Ky. Detention Center*, No. 21-5772, 2022 WL 3479501 (6th Cir. May 7, 2022), the Sixth Circuit explained:

> [S]everal of our sister circuits have held that *Sandin*'s "atypical and significant hardship" standard does not govern procedural due process claims brought by pretrial detainees such as Johnson. . . . In the Sixth Circuit, however, we have no precedent deciding this issue either way.

*Id*. at *2 (citation omitted).

16

segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).

Here, Plaintiff was sentenced just a few weeks after the July 10, 2023, incident. Whatever change in conditions that Plaintiff experienced as a pretrial detainee because of the misconduct—and he alleges none—the change could not have lasted long enough to be "atypical and significant" compared to the ordinary incidents of pretrial detention. Accordingly, the Court concludes that Plaintiff has failed to identify a liberty interest that might support his due process claim.

## VII.    Plaintiff's motion to produce record of discovery

Plaintiff has filed a motion asking the Court to produce certain records. (ECF No. 6.) The Court will deny that motion as moot.

### Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court will deny Plaintiff's pending discovery motion as moot.

Typically, the Court would next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). That determination would, in turn, impact whether Plaintiff could continue his *in forma pauperis* status if he chose to file an appeal. Here, however, Plaintiff has accrued three strikes—three dismissals for failure to state a claim—even before the present dismissal such that he is no longer entitled to proceed without prepayment of filing fees, on appeal or otherwise, under 28 U.S.C. 1915(g).

An order and judgment consistent with this opinion will be entered.


Dated: July 24, 2026                    /s/ Hala Y. Jarbou
                                        HALA Y. JARBOU
                                        CHIEF UNITED STATES DISTRICT JUDGE